FILED
 2014 Jan-15  PM 01:32
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES R. WILLIAMS, JR., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  5:12-cv-03412-HGD |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI).  (Doc.1).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 13).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

I. **Proceedings Below**

Plaintiff filed applications for disability, DIB and SSI benefits on February 11, 2009. (Tr. 14, 118, 125, 152). Plaintiff, a college-educated certified public accountant (Tr. 52), alleged an onset date of December 31, 2005, due to obsessive-compulsive disorder (OCD) and depression. (Tr. 64). Although plaintiff testified that he had prepared a few tax returns "[u]p until April 15, last year," he also stated that it was "mostly for friends." (Tr. 53). Plaintiff's claims for disability benefits were initially denied on May 12, 2009. (Tr. 14). A written request for a hearing was filed on June 11, 2009. (*Id.*). That hearing was held before an Administrative Law Judge (ALJ) by video conference on September 7, 2010. (*Id.*). On November 10, 2010, the ALJ issued a decision denying plaintiff's applications. (Tr. 14-30). The Appeals Council denied plaintiff's Request for Review. (Tr. 105). After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g), 1383(c)(3).

II. **ALJ Decision**

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities.

20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work

commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

The ALJ strictly adhered to this decision-making protocol. At the time of the ALJ's decision, plaintiff was 50 years old with a college education and work experience as a certified public accountant. (Tr. 52, 83). After consideration of the entire record, including plaintiff's testimony, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but he could not climb ladders, ropes or scaffolds; must avoid concentrated exposure to hazards; and was limited to "simple one-or two-step tasks in a low stress environment that required only occasional contact with the public and occasional conversation and interpersonal interaction with co-workers." (Tr. 20). Relying on testimony from a vocational expert (VE), the ALJ found that plaintiff could perform other jobs that existed in significant numbers in the national economy. (Tr. 30, 84-85). The ALJ ultimately concluded that plaintiff was not disabled. (Tr. 30). The Commissioner has adopted the ALJ's facts as stated in his decision.

### III.  Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed.  Plaintiff argues that the ALJ misapplied the "treating physician rule" and, had it been properly applied, he would have been obligated to find that plaintiff was disabled within the meaning of Social Security law.  In the alternative to this Court finding that plaintiff is disabled, plaintiff asserts that this case should be remanded for proper consideration of the evidence and for proper application of the law. (Pl. Brief at 2-3).

Plaintiff states that he does not dispute the findings the ALJ made that he suffered severe medical impairments described as obsessive compulsive disorder, depression, bi-polar disorder, and a history of opiate dependence.  (*Id.* at 4). However, it is plaintiff's position that the negative impact of plaintiff's multiple severe emotional problems is far more severe than the ALJ acknowledges in his decision.  Plaintiff asserts that the severity, frequency and intensity of the emotional or cognitive problems would effectively preclude plaintiff from engaging in substantial gainful work activity on a sustained basis.  (*Id.* at 5).

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*,

792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the Court acknowledges that judicial review of the ALJ's findings is limited in scope, the Court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  Discussion

The ALJ found that plaintiff had the following severe impairments: obsessive-compulsive disorder (OCD), depression, bi-polar disorder, history of opiate dependence and headaches. (Tr. 16). The ALJ further found that the "severe" combination of these medically determinable impairments significantly limited

plaintiff's ability to perform basic work activities. (*Id.*). He stated that the severe nature of these impairments restricted plaintiff's ability to climb ladders, ropes and scaffolds, his ability to be exposed to workplace hazards and to perform skilled work and interact with the public and co-workers. (*Id.*).

According to the ALJ, plaintiff began seeking treatment for headaches and began complaining of symptoms of OCD, depression and anxiety in 2005. (Tr. 17). In November 2008, plaintiff was treated on a short inpatient basis for what plaintiff described as depression with mood swings and racing thoughts. At admission, plaintiff was assigned a global assessment of functioning (GAF) score of 30, which indicates serious impairment in mental functioning at that time. He was diagnosed with major depressive disorder, recurrent severe, without psychotic features; OCD; opiate dependence; substance-induced mood disorder (resolved); rule-out amphetamine abuse; and rule-out bipolar disorder, not otherwise specified. (*Id.* at 17).

One month after admission for mental impairment, the discharge diagnoses were reaffirmed by Dr. Penland of Alabama Psychiatric Services. In December 2009, Dr. Puri of MedCare noted that plaintiff was "very fidgety" and hyperactive with slurred speech, and he was "acting very inappropriately." Dr. Puri listed diagnoses of bipolar disorder, OCD and schizophrenia. Plaintiff was hospitalized for

approximately three days in November 2009 for treatment of mood disorder and OCD. (*Id.*).

The ALJ also noted that the medical records reflect that, between March 10, 2010, and April 22, 2010, plaintiff was treated on an outpatient basis in a chemical dependency program. At discharge, plaintiff was diagnosed with opiate dependence; sedative or anxiolytic dependence; bipolar disorder, type II, depressed with psychotic features; and OCD. (*Id.*).

According to the ALJ, in September 2010, Dr. Penland indicated in a medical source statement that plaintiff's mental impairments, which he diagnosed as opiate dependence, sedative hypnotic dependence, bipolar disorder and OCD, would cause significant limitations with plaintiff's ability to complete the mental abilities and aptitudes of work at all skill levels. (*Id.*). Throughout the record, plaintiff was prescribed a variety of psychotropic medications such as Paxil, Lamictal and Lithium, among others. (*Id.*).

Nonetheless, the ALJ noted that neither plaintiff nor his representative contend that plaintiff's impairments, singly or in combination, meet or medically equal any of the Listed Impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

With regard to plaintiff's activities of daily living, the ALJ stated that the plaintiff has moderate restriction:

A review of the record substantiates that, at various points since the alleged onset date, claimant has admitted that he could build a deck; fly model airplanes; paint the trim on his house; be the primary caretaker of his elderly mother; appropriately answer questions posed by physicians and at the hearing; complete up to 15 federal and state tax returns each year; handle his personal care independently; drive several times per week; shop in stores; pick up takeout orders of food; check his email on a regular basis; watch TV; cook; wash clothes; wash dishes; fold clothes; sweep; vacuum; take out the trash; dust; clean the bathroom, living room and kitchen; cut the grass; use a weed whacker and edger; and pick up around the exterior of his home. (2F/1, 3F/2, 3F/5, 7F/3, 11F/4, 13, 15, 28, 18F/8 and testimony)

In social functioning, the claimant has <u>moderate</u> difficulties, which is more restrictive than the determination of the State Agency psychological consultant. (9F). Claimant reported that he has a very limited social life and that he spends most of his time at home (7F/3 and testimony). Nonetheless, claimant attends church occasionally, visits with friends occasionally, drives several times per week, shops in stores, visits with his sister, completes tax returns for friends and family, lives with his elderly mother, and goes to pick up takeout orders of food (testimony and 7F/3).

With regard to concentration, persistence, or pace, the claimant has <u>moderate</u> difficulties, which is consistent with the determination of the State agency psychological consultant. (9F). A review of the record substantiates that, at various points since the alleged onset date, claimant has admitted that he could build a deck; fly model airplanes; paint the trim on his house; be the primary caretaker of his elderly mother; appropriately answer questions posed by physicians and at the hearing; complete up to 15 federal and state tax returns each year; handle his personal care independently; drive several times per week; shop in stores; pick up takeout orders of food; check his email on a regular basis; watch TV; and perform chores inside and outside the home. (2F/1, 3F/2, 3F/5, 7F/3, 11F/4, 13, 15, 28, 18F/8 and testimony).

As for episodes of decompensation, the claimant has experienced <u>one to two</u> episodes of decompensation, each of extended duration, which is consistent with the determination of the State agency psychological

>consultant (9F).  Claimant was hospitalized in November 2008 and November 2009 for treatment related to mental impairments; however, the hospitalizations are brief and infrequent (2F/4-6, 18F, and 19F). Furthermore, the treating psychiatrist indicated that between September 2009 and September 2010, claimant had a global assessment of functioning score of 65 to 70, which suggests that he had no more than mild symptoms.  (24F).

(Tr. 19) (underlining in original).

>With regard to plaintiff's residual functional capacity, the ALJ stated:

>After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant could never climb ladders, ropes, or scaffolds.  Claimant should avoid concentrated exposure to hazards.  Claimant could perform simple one or two-step tasks in a low stress work environment requiring occasional contact with the public and occasional conversation and interpersonal interaction with coworkers.

(Tr. 20).

Plaintiff asserts that the ALJ did not give sufficient weight to the opinions of his treating physician, Dr. Penland.  He notes that consultative psychologist, William D. McDonald, Ph.D., indicated that plaintiff's emotional problems would inhibit plaintiff's ability to follow through with tasks in a timely fashion and that plaintiff would have difficulty coping with work pressures.  (Tr. 276).

He also noted that the state agency non-examining psychologist, Dr. Jackson, identified significant symptomology associated with OCD and concluded that plaintiff would likely miss one to two days of work per month dealing with

psychological issues and that he would have difficulty performing activities within a schedule. (Tr. 296).

Dr. Heath Penland, plaintiff's treating psychiatrist, has treated plaintiff since December 2008. (Tr. 663). He has treated plaintiff for opiate dependence, OCD and physical problems, including migraine headaches and hyplipidemia. It was Dr. Penland's opinion that plaintiff is unable to meet competitive standards as they relate to being able to complete a normal work day and work week without interruption from psychologically based symptoms, that he is unable to meet competitive standards performing at a consistent pace without an unreasonable number and length of rest periods, that he is unable to meet the competitive standards for responding appropriately to changes in the routine work setting, and that he is unable to meet competitive standards dealing with normal work stress. According to Dr. Penland, plaintiff's mood instability interferes with his ability to sustain attention, and make realistic and independent plans and carry them out. He would also be subject to excessive absenteeism. (Tr. 666-67).

Plaintiff also noted that, at the evidentiary heating, the VE testified that excessive absenteeism or excessive breaks would preclude plaintiff from performing any of the jobs that the VE had mentioned. (Tr. 86).

Based on this testimony, plaintiff asserts that he is, in fact, disabled and that to conclude otherwise, the ALJ had to and did, in fact, disregard the testimony of plaintiff's treating physician without good cause.

In determining whether a disability exists, the ALJ must give the opinion of the treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). This is true even if the physician did not treat the claimant until after the relevant period. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983), *superseded by statute on other grounds, as recognized in Hand v. Heckler*, 761 F.2d 1545, 1548 n.4 (11th Cir. 1985). The ALJ is not, however, required to give controlling weight to issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e). Issues such as whether a claimant is disabled, unable to work, or has an impairment that meets the Social Security listings fall into that category. *Id*.

Good cause for giving the treating physician's opinion less weight exists when (1) the treating physician's conclusion is not supported by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion offered is conclusory or inconsistent with the treating physician's medical records. *See Phillips*, 357 F.3d at 1240-41. Additionally, the claimant's daily activities can contradict the treating physician's opinion and lessen its credibility. *See id.* at 1241. "The ALJ must clearly

articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. If the ALJ does state specific reasons, however, failure to give the treating physician's opinion controlling weight is not reversible error so long as it is supported by substantial evidence. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

The ultimate issue, whether plaintiff is disabled, is left to the determination of the Commissioner, and thus Dr. Penland's opinion that plaintiff could not work a typical day or week is not binding on the ALJ. *See* 20 C.F.R. § 404.1527(e)(1). Furthermore, the ALJ gave "substantial weight" to Dr. Penland's opinion with respect to the portions of the assessment that were consistent with plaintiff's mental RFC, and he discussed Dr. Penland's conclusions that reflected a capability to perform work activity. (Tr. 27, 665-66).

For instance, Dr. Penland noted that plaintiff has a "limited but satisfactory" ability to remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; accept instructions and respond appropriately to criticism from supervisors; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; interact appropriately with the general public; maintain socially appropriate behavior; travel in unfamiliar places; and use public transportation. (Tr. 665-66).

However, the ALJ gave "little weight" to the remainder of Dr. Penland's opinion and explained the reasons for this determination in great detail. (Tr. 27-28). For instance, the ALJ gave little weight to Dr. Penland's opinion that plaintiff was "seriously limited but not precluded" or "unable to meet competitive standards" in 13 out of 25 measurable categories of mental work-related activities identified on the mental assessment form. (Tr. 665-66). He also opined that plaintiff would be absent from work for more than four days per month. (Tr. 667).

Before the ALJ explained his reasoning for giving "little weight" to some of Dr. Penland's opinions, he noted that the medical records themselves do not support that the severity of plaintiff's symptoms, limitations, and side effects of medication are such that plaintiff is disabled from work activity that is consistent with the RFC.

The ALJ noted that plaintiff admitted that he had not looked for occupations that are less demanding or less skilled than accounting, but he indicated that he could work less demanding jobs, such as those requiring him to answer a telephone. However, he has not attempted to work these less demanding jobs because he feels that this work would be demeaning and not financially supportive. Nevertheless, the ALJ concluded plaintiff retains the ability to meet the demands of unskilled work with the additional limitations contained in the RFC. (Tr. 22).

The ALJ also cited evidence which reflected that plaintiff was not compliant with recommended medical treatments (Tr. 24), that he continued to work after the alleged onset date or, if not, that he purposely misled his doctors in order to procure prescriptions (Tr. 24-25), that he exhibited drug-seeking behavior which undermines his allegations (Tr. 25), that he has alleged significant negative side effects from his medication which medical records indicate he previously denied or did not report on a consistent basis (Tr. 25-26), and that his daily activities reflect that he is able to perform within the stated RFC. (Tr. 26). Furthermore, plaintiff admitted to the ALJ at the evidentiary hearing that he "fibbed" to his physicians in order to get medications such as Paxil. According to the ALJ, this undermined the value of his complaints at the hearing and in the medical records. (*Id.*).

With regard to those parts of Dr. Penland's opinion to which he gave little weight, the ALJ stated:

> On the other hand, Dr. Penland surmised that claimant could not meet the competitive standards to complete a normal workday without psychologically based interruptions, respond to changes in a routine setting, deal with normal work stress, or set realistic goals or make plans independently of others. Dr. Penland added that claimant would require an unreasonable number and length of rest periods in a work period, and he would be absent from work more than four days per month. I give these opinions little weight.
>
> Dr. Penland lacks the vocational expertise to offer opinions that claimant would require an unreasonable number and length of rest periods during the day. Furthermore, Dr. Penland reports that he has treated the claimant on about a monthly basis since December 2008. Indeed, the treating relationship began in December 2008, but most often, the claimant sought treatment every three months. Furthermore, Dr. Penland recommended that the claimant follow-up every three months. Likewise, the nature of the treatment notes suggests that the focus of the sessions is opiate dependence, and to a lesser extent, the complaints associated with OCD, depression, anxiety, or bipolar disorder. Moreover, Dr. Penland indicated that claimant had a GAF score of 65 to 70 from September 2009 to September 2010, which suggests that claimant experienced only mild symptoms during that time. Additionally, claimant has been hospitalized on at least two occasions, but in both instances, he was released within three days. Dr. Penland undoubtably relies on claimant's subjective complaints, but the claimant's credibility is low, and the repeated drug-seeking behavior and admitted false statements to physicians undermines any conclusions Dr. Penland formulates based on the claimant's statements during treatment sessions. Lastly, Dr. Penland did not consistently indicate in his treatment notes that claimant had work related limitations. Not until claimant presented Dr. Penland with a functional capacity questionnaire did Dr. Penland articulate any work restrictions and Dr. Penland did not contemporaneously provide the reported limitations in the ordinary course of treatment. Claimant had not been treated by Dr. Penland since May 2010, and there are no treatment records to accompany the medical source statement from September 2010 (4F, 22F, and 24F).

(Tr. 27-28).

In contrast, the ALJ gave "great weight" to the opinions offered by Dr. McDonald insofar as his opinions are consistent with the RFC. (Tr. 28). Although Dr. McDonald did not quantify plaintiff's work capacity and level of limitation, he examined plaintiff and was provided an opportunity to observe, interview and perform a mental status examination of him, as well as review the available medical records. (Tr. 28). Based on this, Dr. McDonald pointed out that plaintiff's ability to understand, carry out and remember instructions is at least mildly impaired, that plaintiff's ability to follow through with tasks in a timely fashion is significantly impaired, and that claimant is likely to have difficulty coping with work pressures. Consequently, the RFC and the consultative opinion are consistent. According to the ALJ:

> The residual functional capacity recognizes that claimant is limited to unskilled work with additional limitations regarding interpersonal interactions, which is consistent with the wording of Dr. McDonald's findings. Additionally, the statements are consistent with the objective clinical signs reported by Dr. McDonald, as well as the brief hospitalizations, the claimant's diminished credibility, the effectiveness of the medications as reported by the claimant, and the claimant's activities of daily living.

(Tr. 28).

The ALJ also gave great weight to the opinions of the State agency medical consultants because they are highly-qualified physicians and their opinions are consistent with the medical records that they reviewed and with the record as a whole.

(*Id.*).  For instance, the claimant's hospitalizations for mental impairments have been brief; the claimant admits to being untruthful with his physicians; the claimant exhibits drug-seeking behavior; he admits that the medications are effective in some instances; he can perform a variety of daily activities; and the record does not substantiate that there was an exacerbation of symptoms around the alleged onset date.  Further, the ALJ noted that claimant worked with the same impairments that he now alleges are disabling.  (*Id.*).

Thus, the ALJ rejected some of the opinions of Dr. Penland because his conclusions were not supported by the evidence; the evidence supported a contrary finding; or the opinion offered was conclusory or inconsistent with the treating physician's medical records.  These are valid bases for rejecting the opinion of a treating physician.  *See Phillips*, 357 F.3d at 1240-41.  The decision provided by the ALJ is an articulation of specific reasons for giving little weight to parts of Dr. Penland's September 2010 assessment of plaintiff.  Because there is good cause to discount parts of the treating physician's opinion, the ALJ acted within his authority by partially discounting Dr. Penland's opinion while giving "substantial weight" to those conclusions that are consistent with the ALJ's RFC findings.  *Phillips*, 357 F.3d at 1241.

Accordingly, upon review of the administrative record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law.  Therefore, that decision is due to be affirmed.  A separate order will be entered.

DONE this 15th day of January, 2014.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE